SCOTT J. HYMAN (State Bar No. 148709)
sjh@severson.com
ERIC J. TROUTMAN (State Bar No. 229263)
ejt@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

MARK D. LONERGAN (State Bar No. 143622)
mdl@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
WELLS FARGO BANK, N.A.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOUBIN MORTEZAPOUR, Individually and on Behalf of All Other Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION,<br><br>Defendant. | Case No. 3:12-cv-01520-L-BLM<br>Hon. M. James Lorenz<br>Ctrm.: 14<br><br>**CLASS ACTION**<br><br>**WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF MOTION TO ENFORCE CONTRACTUAL ARBITRATION CLAUSE AND CLASS ACTION WAIVER**<br><br>Date:  November 5, 2012<br>Time:  10:30 a.m.<br>Ctrm.:  14<br><br>Action Filed:  June 20, 2012 |

07685.1160/2426605.2

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. PLAINTIFF'S CLAIMS ARE WITHIN THE SCOPE OF THE ARBITRATION
       CLAUSE ................................................................................................................... 2

    A.    The Clause is Easily Broad Enough to Encompass Plaintiff's Claims ..................... 2

    B.    Tort Claims Are Within the Scope of the Arbitration Clause .................................. 2

    C.    TCPA Claims Are Within the Scope of the Arbitration Clause............................... 5

III. PLAINTIFF AGREED TO THE ARBITRATION PROVISION ........................................... 7

IV. PLAINTIFF CAN VINDICATE HIS STATUTORY RIGHTS IN ARBITRATION ............... 7

V. THE CLAUSE IS NOT UNCONSCIONABLE ................................................................... 8

    A.    Procedural Unconsionability is Limited Here ............................................................ 8

    B.    The Arbitration Clause is not Substantively Unconscionable................................. 9

VI. CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aiken v. World Finance Corp. of SC,*
  644 SE 2d 705 (S.C. 2007) .................................................................................................... 4

*AT&T Mobility LLC v. Concepcion*,
  ___ U.S. ___, 131 S.Ct. 1740. ("*Concepcion*") ................................................................ 8, 10

*Badie v. Bank of America*
  (1998) 67 Cal.App.4th 779 ..................................................................................................... 9

*Busch v. Globe Industries*
  (1962) 200 Cal.App.2d 315 .................................................................................................... 9

*Cape Flattery Ltd. v. Titan Mar., LLS,*
  647 F.3d 914 (9th Cir. 2011) ............................................................................................. 2, 3

*Chassereau v. Global-Sun Pools, Inc.*
  644 S.E. 2d 718 (S.C. 2007) .................................................................................................. 4

*Coneff v. AT & T Corp.*,
  673 F. 3d 1155 (9th Cir. 2012) .............................................................................................. 8

*Europlasma, S.A. v. Solena Group, Inc.*,
  604 F.Supp.2d 66 (D.D.C. 2009) .......................................................................................... 4

*Ford v. NYLCare Health Plans of Gulf Coast, Inc.*,
  141 F.3d 243 (5th Cir. 1998) ................................................................................................ 4

*Green Tree Servicing Corp. v. Fisher*,
  162 P.3d 944 (Okla. Civ. App. 2007) .................................................................................... 4

*Hall Street Associates, LLC v. Mattel, Inc.*,
  552 U.S. 576 (2008) ............................................................................................................ 10

*Harrier v. Verizon Wireless Personal Communs, LP*,
  2012 U.S. Dist. Lexis 142428 (M.D. Fla. Oct. 2, 2012) ........................................................ 6

*Hyde v. RDA, Inc.*,
  389 F. Supp. 2d 658 (D. Md. 2005) ...................................................................................... 4

*In re Jiffy Lube International, Inc.*
  847 F. Supp. 2d 1253 (S.D. Cal. 2012) .............................................................................. 5, 6

*King Motor Co. of Ft. Lauderdale v. Jones*,
  901 So.2d 1017 (Fla. Dist. Ct. App. 2005) ............................................................................ 4

*Lhotka v. Geographic Expeditions, Inc.*,
    181 Cal.App.4th 816 (2010) .......................................................................................... 8

*Mediterranean Enterprises, Inc. v. Ssangyong*,
    708 F. 2d 1458 (9th Cir. 1983) ..................................................................................... 3

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ........................................................................................... 6, 7, 10

*Parfi Holding, AB v. Mirror Image Internet, Inc.*,
    817 A.2d 149 (Del. 2002) .............................................................................................. 4

*Perdue v. Crocker National Bank*
    (1985) 38 Cal.3d 913 ..................................................................................................... 9

*Pereira v. Santander Consumer USA, Inc*.
    2012 U.S. Dist. Lexis 45627 (N.D. Ill. Apr. 2, 2012.) .............................................. 6, 7

*Rogers-Dabbs Chevrolet-Hummer, Inc. v. Blakeney*
    50 So.2d 170 (Miss. 2007) ............................................................................................ 4

*Smith v. Steinkamp*,
    318 F.3d 775 (7th Cir. 2003) ........................................................................................ 5

*Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.*,
    995 F. Supp. 1060 (D. Az. 1997) .................................................................................. 3

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. U.*,
    489 US 468 (1989) ........................................................................................................ 6

*Zolezzi v. Dean Witter Reynolds, Inc.*,
    789 F. 2d 1447 (9th Cir. 1986) ..................................................................................... 2

**OTHER AUTHORITIES**

23 FCC Rcd. 559 .................................................................................................................. 4

7 FCC Rcd at 8769, ¶31 ....................................................................................................... 5

# I.
# INTRODUCTION

Plaintiff sues Wells Fargo for placing autodialed calls to him to discuss his credit card account. Although the Plaintiff's use of the Card is governed by a Cardholder Agreement containing an arbitration clause, Plaintiff argues that claims related to the calls somehow fall outside the scope of that agreement. Plaintiff is wrong. His claim easily fits within the broad scope of the clause.

Plaintiff makes three other equally dubious arguments. For instance, while his counsel argues that Plaintiff "never saw"[1] the terms of arbitration clause at issue, Plaintiff's declaration states only:

> My records do not reflect, nor do I remember receiving a card member agreement or any supplementary material informing me of the terms and conditions of the account.
> Mortezapour Dec. (Doc. No. 24) ¶ 4.

Yet Plaintiff surely did not expect to use the Card with no strings attached. Terms and conditions exist and were delivered to him at the time he received his card. He accepted those terms when he used the card, which he admits doing. Mortezapour Dec. (Doc No. 24) ¶¶ 3 and 5. Plaintiff's absence of memory and records notwithstanding, the direct evidence before the Court establishes that the Cardholder Agreement was delivered to Plaintiff, as were all pertinent mailings.

Plaintiff next contends that he cannot "effectively vindicate his federal statutory rights under the TCPA" in arbitration. Yet Plaintiff's claims are easily resolved in arbitration and the Opposition provides no explanation as to why the arbitration process precludes the recovery he seeks.

Finally, and predictably, Plaintiff urges that the arbitration clause is unconscionable under California law. It is not. Requiring the parties to arbitrate their dispute is simply not oppressive and the arbitration provision is not unilateral in design or impact.

Accordingly the arbitration clause must be enforced and Plaintiff compelled to arbitrate his claim and on an individual basis only.[2]

---

[1] Opposition p. 2 lns. 14-16 ("Mr. Mortezapour never received a card member agreement or any supplementary material letting him know what the terms and conditions of the account were."); 20 l. 27- p. 21 ln.1. ("Holding Mr. Mortezapour to the terms of an adhesive contract he never saw would result in both oppression and surprise.")

[2] Additionally, after devoting two and a half pages to supporting, without evidence, Plaintiff's (footnote continued)

**II.**

**PLAINTIFF'S CLAIMS ARE WITHIN THE SCOPE OF THE ARBITRATION CLAUSE**

**A.     The Clause is Easily Broad Enough to Encompass Plaintiff's Claims**

Under the arbitration clause at issue, "disputes" are subject to arbitration. A "dispute" is defined as "any unresolved disagreement between [Plaintiff] and the Bank." Moody Dec. ¶12, Ex. "G" at ¶ (33)a. It is difficult to imagine a broader clause.

Plaintiff and Wells Fargo have an "unresolved disagreement." Plaintiff contends Wells Fargo called him in violation of the TCPA and Wells Fargo disagrees. Hence an arbitrable "dispute" exists

Plaintiff does not deny that a disagreement exists between the parties but argues strenuously that the existing dispute does not "arise" from Plaintiff's Card account or related matters. Opposition p. 5 ln. 25- p. 6 ln. 1. This is incorrect for two reasons. First, the clause at issue does not require that the claim be tethered, in any way, to the Plaintiff's use of the Card. All that is required is that an unresolved disagreement exist between the parties, and one certainly does here.  Second, even if an "arises from" limitation were present, the challenged conduct in this case is telephone calls placed in an effort to collect a debt created as a result of Plaintiff's use of the Card. This is well within the foreseeable purview of the arbitration clause, which specifically includes "statutory" claims within its purview. Moody Dec. ¶12, Ex. "G" at ¶ (33)a. Hence, Plaintiff's claims must be arbitrated.

**B.     Tort Claims Are Within the Scope of the Arbitration Clause**

"The Supreme Court has held that tort claims are within the scope of arbitration agreements..." *Zolezzi v. Dean Witter Reynolds, Inc*., 789 F. 2d 1447, 1449 (9th Cir. 1986).

Nonetheless, Plaintiff advances the rather specious argument that tort claims are simply not arbitrable.[3]  Plaintiff provides no authority for this broad proposition and instead relies on misapplied quotes from *Cape Flattery Ltd. v. Titan Mar., LLS*, 647 F.3d 914, 924 (9th Cir. 2011) to advance his position. Yet *Cape Flattery* does not hold, as Plaintiff implies, that tort claims are never arbitrable.

---

substantive position (Opposition pp. 23-25) Plaintiff then asks the Court to ignore substantive arguments at this stage. Opposition p. 25 lns. 15.5-21.5. Wells Fargo agrees that the substantive flaws in the Plaintiff's case should be resolved before an arbitrator, and not before this Court.

[3] Opposition pg. 7 heading "Tort Claims Are Not Arbitrable."

1  Instead it merely determined that the phrase "[a]ny dispute arising under this Agreement shall be
2  settled by arbitration" is not broad enough to encompass tort claims. *Cape Flattery* 647 F.3d at 924
3  In reaching that conclusion, the Court followed previous decisions holding that similar language
4  meant that only disputes "relating to the interpretation and performance of the contract itself" are
5  arbitrable. *Cape Flattery* 647 F.3d at 924 following *Mediterranean Enterprises, Inc. v. Ssangyong*,
6  708 F. 2d 1458, 1464 (9th Cir. 1983). Hence the Court sought to determine whether the tort claim
7  before it amounted to a dispute regarding the language of the contract. *Cape Flattery* 647 F.3d at 924
8  It was in that context that the court made the rather unremarkable observation that "when a tort claim
9  constitutes an independent wrong from any breach of the contract it does not require interpretation of
10 the contract and is not arbitrable." *Id.*

11     *Cape Flattery* does not assist the Plaintiff here. The language of the arbitration clause in this
12 case is far broader. It is not limited to disputes "arising under this Agreement" but rather applies to
13 any unresolved disagreement. Such language is easily broad enough to encompass tort claims and the
14 language of the clause expressly contemplates that "torts, or other wrongful actions" and "statutory,
15 common law and equitable claims" would all fall within its broad purview.  E.g. *Valdiviezo v. Phelps*
16 *Dodge Hidalgo Smelter, Inc.*, 995 F. Supp. 1060, 1068 (D. Az. 1997) (Compelling arbitration of
17 employment tort claims finding "the arbitration agreement here did not merely require arbitration of
18 disputes arising from the employment contract; it required arbitration of all disputes arising from any
19 aspect of [the] employment...") Moreover, even the illustrative language of the clause here is far
20 broader than that considered in *Cape Flattery* and includes "any disagreement relating in any way to
21 the Card or related services, accounts or matters…" Moody Dec. ¶12, Ex. "G" at ¶ (33)a.
22 Disagreements regarding "services, accounts or matters" are untethered to contract interpretation and
23 hence tort claims are easily within its purview. Of course, the clause also expressly states as much.
24 Moody Dec. ¶12, Ex. "G" at ¶ (33)a. ("Dispute" includes "claims based on… tort.")

25     Similarly, Plaintiff's out-of-circuit authorities do not stand for the proposition that tort claims
26 are unarbitrable. Instead, most of Plaintiff's authority stands for the same proposition as *Cape*

*Flattery* that arbitration clauses containing "arising under this agreement" limitations do not encompass independent tort claims.[4] Again, however, the arbitration agreement in this case is not so limited in scope and Plaintiff's claims arise from the "services, accounts or matters" specifically identified in the clause's illustrative language. Moody Dec. ¶12, Ex. "G" at ¶ (33)a.

Three cases cited by Plaintiff stand for a different rule, but none for the proposition that tort claims are generally unarbitrable, as Plaintiff contends. For instance, in *Rogers-Dabbs Chevrolet-Hummer, Inc. v. Blakeney* 50 So.2d 170, 173 (Miss. 2007) the court held the moving party failed to demonstrate the consumer had agreed to arbitrate unforeseeable claims concerning "a scheme of using his name to forge vehicle titles and bills of sale to sell stolen vehicles; and the commission of civil fraud against him by misappropriating his title to the Hummer he purchased and forging his name on fake titles and bills of sale on various stolen vehicles." *Rogers-Dabbs Chevrolet-Hummer,* 50 So.2d at 177. Similarly, the *Aiken* court held: "this Court will refuse to interpret any arbitration agreement as applying to outrageous torts that are unforeseeable to a reasonable consumer in the context of normal business dealings." *Aiken v. World Finance Corp. of SC,* 644 SE 2d 705, 709 (S.C. 2007); see also *Chassereau v. Global-Sun Pools, Inc.* 644 S.E. 2d 718, 710 (S.C. 2007) (same.)

Plaintiff cites to no authority reflecting that the rule of *Aiken* has been adopted in California or the Ninth Circuit. However these cases do not aid Plaintiff anyway because the conduct in this case is not "outrageous" and "unforeseeable." The FCC has reasoned that by providing a telephone

---

[4] Opposition pp. 9-11, citing *Europlasma, S.A. v. Solena Group, Inc.*, 604 F.Supp.2d 66, 70 (D.D.C. 2009)(Interpreting arbitration clause governing claims that "arise out of or relate to the Agreement"); *Green Tree Servicing Corp. v. Fisher*, 162 P.3d 944, 946-947 (Okla. Civ. App. 2007) ("The issue, therefore, is whether this claim is within the class of 'disputes, claims, or controversies arising from or relating to this Agreement or the relationships which result from this Agreement' as provided in the arbitration clause."); *Hyde v. RDA, Inc.*, 389 F. Supp. 2d 658, 662 (D. Md. 2005) (Clause read "all disputes, claims, or controversies arising from or relating to the Purchaser's purchase of the Vehicle, the Agreement or the relationship which result [sic] from the Agreement, or the validity of this arbitration clause or the Agreement shall be resolved by binding arbitration."); *King Motor Co. of Ft. Lauderdale v. Jones*, 901 So.2d 1017, 1019-20 (Fla. Dist. Ct. App. 2005) (interpreting similar clause*); Parfi Holding, AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 151 (Del. 2002) (Interpreting "underlying agreement that required arbitration of claims 'arising out of or in connection with' the agreement itself.") *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 251 (5th Cir. 1998) (interpreting similar clause).

1  number to a creditor the customer has invited calls—including autodialed calls—to that number
2  regarding the account. 23 FCC Rcd. 559, 556 (" [P]ersons who knowingly release their phone
3  numbers have in effect given their invitation or permission to be called at the number which they
4  have given, absent instructions to the contrary); see also 7 FCC Rcd at 8769, ¶31 ("[T]he called party
5  has in essence requested the contact by providing the caller with their telephone number for use in
6  normal business communications.") All Wells Fargo did here was call a number Plaintiff provided
7  in connection with his account. This is foreseeable conduct arising from the use of Plaintiff's card.

        Accordingly Plaintiff's claims are within the scope of the arbitration clause here.

### C.  TCPA Claims Are Within the Scope of the Arbitration Clause

        Plaintiff cites to *In re Jiffy Lube International, Inc.* ("*Jiffy Lube*") for the proposition that TCPA claims are not arbitrable. Opposition p. 13. Yet that was not what *Jiffy Lube* held at all.

        In *In re Jiffy Lube International, Inc.*, the Court considered whether a TCPA claim was within the scope of an arbitration clause governing "any and all" disputes between the parties. *In re Jiffy Lube International, Inc.* 847 F. Supp. 2d 1253, 1262-1263 (S.D. Cal. 2012). However, the Court found that despite its broad language, the clause was not applicable to completely separate incidents such as homicide. *Id.* at 1263, quoting *Smith v. Steinkamp*, 318 F.3d 775, 777 (7th Cir. 2003). The Court assumed that the clause would "clearly be unconscionable" as applied in those circumstances. *Id.* The Court then assumed, without analysis, that because the clause might be unenforceable in a hypothetical context it was not enforceable, as written, in *any* circumstance. *Id.*

        The Court then proceeded to consider whether a TCPA claim would fall within a hypothetical limitation "that the dispute at issue must 'arise out of or relate to' the contract." *Id.* The wording of this limitation is key to the Court's ultimate determination. This so because the contract at issue had a narrow scope—it was one "governing [Plaintiff's] oil change." *Id.* Hence, the Court was able to easily determine that Defendant's conduct of sending text messages offering "membership in a club that would provide discounts on an oil change" was not related to the contract and, therefore, not arbitrable. *Id.* The Court concluded: "The existence of the original contract may have been the 'but for' cause of the alleged TCPA violation, but this alone is not necessarily enough to establish that the claim arises out of or relates to the contract." *Id.*

Accordingly, *Jiffy Lube* does not answer the question, presented here, of whether a TCPA claim fits within the scope of a broad arbitration provision and it certainly does not hold that TCPA claims are unarbitrable, as Plaintiff suggests. Instead the Court merely found, in a hypothetical setting, that a clause limited to claims "arising from" a contract does not include claims arising from conduct unrelated to that contract. This is the same unhelpful proposition advanced in *Cape Flaterry*.

*Jiffy Lube* does not assist Plaintiff. First, the Court need not invent a limitation to salvage Wells Fargo's arbitration clause. It is enforceable as written. Wells Fargo is aware of no law holding that a contract between parties to arbitrate all disputes arising between them is *per se* void as the *Jiffy Lube* court assumed and Plaintiff does not provide any.[5] More to the point, unlike the conduct in *Jiffy Lube*—which was sending advertisements to the Plaintiff unrelated to the specific service the Plaintiff received under the contract at issue—Wells Fargo's conduct here was directly related to the Customer Agreement between the parties. It was not soliciting future or additional services. Instead, Wells Fargo attempted to contact Plaintiff regarding the use of the very Card governed by the subject Customer Agreement. Hence the Customer Agreement was not merely the "but for" cause of the calls, as was the case in *Jiffy Lube*, but rather the calls truly "arose from" Plaintiff's use of the Card and his account. As the account, the Card, and "related services" are all expressly referenced as being within the scope of the clause,[6] the Plaintiff's TCPA claim falls directly within its purview.

Plaintiff's out-of-circuit authorities do not compel a different result. Opposition p. 13 ln. 27-p. 14 ln. 3, citing *Harrier v. Verizon Wireless Personal Communs, LP*, 2012 U.S. Dist. Lexis 142428 (M.D. Fla. Oct. 2, 2012) and *Pereira v. Santander Consumer USA, Inc.* 2012 U.S. Dist. Lexis 45627 (N.D. Ill. Apr. 2, 2012.)  *Harrier* denied arbitration after finding that the clause had been discharged

---

[5] The ultimate question in interpreting any contract is one of the parties' expectation. Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must "give effect to the contractual rights and expectations of the parties." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. U.*, 489 US 468, 479 (1989). In this endeavor, "as with any other contract, the parties' intentions control." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

[6] Moody Dec. ¶12, Ex. "G" at ¶ (33)a.  ("[Dispute] includes any disagreement relating in any way to the Card or related services, accounts or matters…")

by a bankruptcy without any discussion of the appropriateness of arbitrating TCPA claims. *Harrier,* at * 3. Equally unhelpful is *Pereira* in which the Court denied arbitration of the TCPA claim because it found the Plaintiff was not a signator to the arbitration agreement. *Pereira*, at * 2. Neither circumstance is present here and both cases are, therefore, inapposite.

Accordingly Plaintiff's TCPA claims are easily within the scope of the arbitration clause.

## III.
## PLAINTIFF AGREED TO THE ARBITRATION PROVISION

Plaintiff next argues that he did not assent to the arbitration clause in the Customer Agreement. Opposition pp. 14-16. Yet Plaintiff concedes that he entered into the Customer Agreement (Opposition p. 15 lns. 8-9) and does not deny that an arbitration clause existed within that Customer Agreement. Nonetheless Plaintiff claims "he did not clearly and knowingly assent to arbitrate his claims." Opposition p. 15 lns. 8-9. This argument is a non-starter. The evidence is precisely the contrary. Plaintiff entered into the Customer Agreement and that agreement undeniably contained the arbitration clause. Plaintiff's lukewarm statement that his "records do not reflect" and that he does not "remember" receiving the Customer Agreement is non-probative, let alone dispositive. As a factual matter, the Customer Agreement was sent to Plaintiff with the Card and was accepted by the Plaintiff's use of that Card. Moody Dec. ¶ 7. There is no countervailing evidence. Hence the existence and terms of a binding arbitration clause have been established.

## IV.
## PLAINTIFF CAN VINDICATE HIS STATUTORY RIGHTS IN ARBITRATION

Plaintiff sues Wells Fargo for damages under the TCPA. Damages are a remedy commonly and easily awarded by arbitrators and such an award is binding and enforceable. Nonetheless, Plaintiff contends he cannot vindicate his statutory rights in arbitration. Opposition pp. 16-19.

Wells Fargo has no quibble with the rule that Plaintiff has not given up his substantive rights under the TCPA by pursuing arbitration. E.g. *Mitsubishi Motors*, *supra*, 473 U.S. at 628. Yet Plaintiff has not shown why the arbitration clause at issue prevents Plaintiff from vindicating those substantive rights in this case. In a different section of his opposition Plaintiff hints that the cost of arbitration may be excessive relative to any likely recovery, but Plaintiff has provided no evidence as to the anticipated cost of arbitration in this case. Moreover, Plaintiff ignores the carve-out provision

for small-claims cases found in the arbitration clause. Moody Dec. ¶ 12, Ex. "G" ¶33e. Hence the clause preserves to Plaintiff an inexpensive forum to arbitrate small dollar claims.

In any event, as the Ninth Circuit pointed out in *Coneff v. AT & T Corp.*, 673 F. 3d 1155 (9th Cir. 2012), the Supreme Court has specifically rejected this very argument:

> [T]he Court's majority expressly rejected the dissent's argument regarding the possible exculpatory effect of class-action waivers: 'The dissent claims that class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system. But States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons.'

(Underlining added.) *Coneff*, *supra.*, 673 F. 3d at 1158, quoting *AT&T Mobility LLC v. Concepcion*, ___ U.S. ___, 131 S.Ct. 1740, 1753. ("*Concepcion*")

Accordingly, Plaintiff has failed to demonstrate that the arbitration clause prevents him from vindicating his statutory rights. Instead, his rights are well in-tact and the clause is enforceable.

## V.
## THE CLAUSE IS NOT UNCONSCIONABLE

### A.   Procedural Unconscionability is Limited Here

The arbitration clause in this case is conspicuous and, as demonstrated in the moving papers, consumes large and obvious portions of both the original Customer Agreement and subsequent revisions. Hence, a cursory review of this material alerts the customer to the existence of the clause.

The point of procedural unconscionability analysis is to determine whether the circumstances surrounding the acceptance of the contract are so oppressive—or the inclusion of the term so surprising—that they cast a shadow of unfairness over the transaction. E.g. *Lhotka v. Geographic Expeditions, Inc.*, 181 Cal.App.4th 816, 821 (2010). A limited element of such unconscionability is unavoidable here because of the use of an adhesive bill-stuffer. But that is all Plaintiff points to. Plaintiff's declaration is silent as to an awareness of the arbitration clause. He simply states that his "records do not reflect" the agreement and he does not recall receiving it.  The only reasonable inference from this evidence is that Plaintiff simply did not maintain or read the material he was sent. Had Plaintiff done so—in the comfort of his own home and at his leisure—he would have been well aware of the clause. Hence, there is no showing of overbearing pressure, trickery or concealment of the clause in this case, just disinterest by the Plaintiff.

Accordingly there is only a modest level of procedural unconscionability present here.

### B. The Arbitration Clause is not Substantively Unconscionable

Plaintiff contends that the arbitration clause is substantive unconscionable for three reasons. Opposition pp.21-23. Plaintiff is wrong as to each.

First, Plaintiff contends the clause is substantively unconscionable because Wells Fargo can unilaterally modify the terms of its Customer Agreement. Tellingly, Plaintiff supports this argument solely with cases in the employment context. Opposition p. 21, lns. 7-14 and fn 14. There is a wide and obvious difference here. This case does not involve an employment contract. The Customer Agreement governs the terms under which Wells Fargo will continue to advance funds to Plaintiff. Similarly Plaintiff is not obligated to use the Card on the new terms, or at all. Not surprisingly, the parties remain free to define the terms of their ongoing relationship and such modification provisions have been in long use in California. E.g. *Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 923, *Busch v. Globe Industries* (1962) 200 Cal.App.2d 315, 320, but see *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 796 (Bank's right to modify the agreement did not allow the Bank to add an entirely new kind of term, not addressed in the original agreement.) Importantly, the arbitration clause was present in all iterations of the Customer Agreement, including the one in effect in 2004, and the scope of the arbitration clause never changed. Accordingly, Plaintiff's first challenge fails.

Second, Plaintiff argues that Wells Fargo "reserved for itself the right to pursue all claims for debt collection in court." Opposition p. 21 lns. 15-16. Not so. The arbitration clause applies mutually and allows both parties to compel arbitration of any dispute. It is true that the clause prohibits Wells Fargo from <u>initiating</u> an arbitration to collect a consumer debt, however that simply imposes a consumer-friendly limitation on Wells Fargo. It assures Wells Fargo's debt collection efforts will begin in state court. Customers remain free to compel arbitration of such actions, however.

Third, Plaintiff challenges that requiring arbitration is unconscionable because the process is expensive. Opposition p. 22. As already noted above, however, Plaintiff ignores the provision exempting small dollar claims from arbitration and fails to introduce any evidence as to the cost of arbitration. More to the point, this challenge is not aimed at the provisions of the Customer Agreement but rather at the heart of the arbitration process itself. Yet, in *Concepcion* the Supreme

Court specifically forbade reliance on "the uniqueness of an agreement to arbitrate" to invalidate arbitration provisions. *Concepcion* at 1747. Plaintiff urges exactly such an error here. Specifically, by selecting arbitration the parties agree to pay increased administrative costs in exchange for a streamlined disposition of disputes. E.g. *Mitsubishi Motors*, *supra*, at 633. (Noting that arbitration offers "streamlined proceedings" and "expeditious results.") Hence, in exchange for the arbitrator's fee, the parties obtain "the simplicity, informality, and expedition of arbitration." *Mitsubishi Motors*, *supra*, at 628. Plaintiff's assault on the cost of the process, therefore, is one aimed at the cost-benefit analysis Congress made when it determined that arbitration is a favored procedure.[7] Although arbitration may have its downside, it is a highly favored dispute resolution process that, given its benefits, cannot be viewed as *per se* "unconscionable" as Plaintiff suggests. *Concepcion* at 1745.

Accordingly the arbitration clause is enforceable and the motion must be granted.

## VI.
## CONCLUSION

For the foregoing reasons, the Plaintiff's case must be stayed and he must be compelled to pursue arbitration on an individual basis only, and not on a class wide basis.

DATED:  October 26, 2012                         SEVERSON & WERSON
                                                 A Professional Corporation


                                                 By:     *s/ Eric J. Troutman*
                                                 Attorney for Defendant

                                                 WELLS FARGO BANK, N.A
                                                 E-mail: ejt@severson.com

---

[7] Congress enacted the FAA to "replace judicial indisposition to arbitration with a 'national policy favoring (it).'" *Hall Street Associates, LLC v. Mattel, Inc.,* 552 U.S. 576, 581 (2008).